## Doty *v.* Federal Land Bank of Louisville *et al.*

### (*Nashville,* December Term, 1935.)

Opinion filed January 11, 1936.

Petition to rehear denied February 15, 1936.

Joe B. Weems, and Robert S. Clement, both of Dickson, for Doty.

Frank Hall, of Dickson, for Federal Land Bank.

W. B. Leech, of Dickson, for W. B. Leech.

Mr. Chief Justice Green delivered the opinion of the Court.

This bill was filed by complainant, Doty, to enjoin the execution of a deed by J. M. Pickens, trustee, to

certain land sold under a trust deed by said trustee to W. B. Leech; the land having been previously conveyed in trust by Doty to secure an indebtedness to the Federal Land Bank of Louisville. The chancellor dismissed the bill upon motion, and complainant, Doty, has appealed to this court.

Some previous applications have been made to the court with reference to the appointment of a receiver and the reinstatement of an injunction, but these matters are not now important, and need not be considered in this discussion.

Passing over some immaterial details, Doty defaulted in the payment of installments of principal and interest secured by the trust deed, and the trustee duly advertised the land for sale for the satisfaction of the indebtedness secured. The bill avers that on the day of sale the complainant, Doty, before 10 o'clock in the forenoon delivered to said trustee a plan of division of the lands to be sold, subscribed by Doty and bearing date subsequent to the date of advertisement, and requested that only so much of the land be sold as was necessary to satisfy the debt and costs and that the land be sold according to the plan furnished. In the plan furnished to the trustee the land was so divided as to segregate a homestead set apart to Doty in a general creditor's proceedings brought against him. Doty's efforts were to have that part of the land, excluding the homestead, sold first, and the bill charges that a purchaser was present and notified the trustee that he (the proposed purchaser) would pay the amount of the mortgage indebtedness with interest and costs for that part of the land not indicated as homestead on the plan.

It was alleged, however, that the trustee declined to

sell the land in parcels as requested, ignored the notice given him, sold the entire tract, and that W. B. Leech became the purchaser at the trustee's sale at a figure somewhat in excess of the mortgage indebtedness.

Complainant, Doty, relies on section 7802 of the Code of 1932 as follows:

"At any time before ten o'clock in the forenoon on the day of sale, the defendant or other person whose property is to be sold may deliver to the officer or person making the sale, a plan of division of the lands to be sold, subscribed by him, bearing date subsequent to the date of advertisement, in which case so much of the land as may be necessary to satisfy the debt and costs, and no more, shall be sold according to the plan furnished. If no such plan is furnished, the land may be sold without division."

The chancellor was of opinion that this statute applied only to sales under execution and not to sales by a trustee under a mortgage. The chancellor was further of opinion that the chancery court was without jurisdiction to afford any relief to the complainant upon the facts appearing in the bill.

The first proposition advanced by the defendants in support of the chancellor's ruling is that section 3 of chapter 14 of the Acts of 1799, upon which the compilers of the Code of 1932 appear to base the section quoted, is by its terms confined to sales under execution. It is argued that the original act only related to sales of the property of a defendant in execution; that the words "or other person whose property is to be sold" were added by the Code of 1932; that the trust deed here involved was executed in 1923; and that the Code pro-

vision would accordingly not reach a sale under this trust deed.

Defendants ignore the fact that section 7802 of the Code of 1932 is almost a literal reproduction of section 2154 of the Code of 1858. The statute therefore upon which complainant's bill is based was in force long before 1923.

The next proposition of the defendants, accepted by the chancellor, is that section 7802 of the Code relates only to sales under execution. This, in our opinion, is likewise a mistake.

Section 7802 of the Code of 1932 is contained in chapter 12, part 2, of that book, and the title of the chapter is "The Advertisement of the Sale of Land Under Mortgages, Judicial Process," etc. Section 2154 of the Code of 1858, the prototype of section 7802 of the Code of 1932, is contained in chapter 7 of the Code of 1858, and the title of that chapter is "Of the advertisement of the sale of land and negroes under mortgages, judicial process, etc."

The first section of chapter 12, part 2 of the Code of 1932, section 7793, is in these words:

"Every person whose duty it is to sell land in a fiduciary capacity, or under judicial orders or process, shall, except in cases covered by section 10535, or in the absence of any special provisions on the subject in the authority under which he acts, publish such sale at least three different times in some newspaper published in the county where the sale is to be made, the first of which publications shall be at least twenty days previous to the sale."

Section 2145 of the Code of 1858 is in substance the same as section 7793 of the Code of 1932; the difference

in the two sections being irrelevant to the case before us. Both sections apply to persons whose duty it is to sell land "in a fiduciary capacity, or under judicial orders or process."

From the foregoing it seems quite obvious that the provisions of chapter 12, part 2, of the Code of 1932, and the provisions of chapter 7 of the Code of 1858 relate alike to sales under execution and to sales under mortgages or trust deeds.

It may be observed that there is another chapter of the Code of 1932 entitled "Execution." Article 5 of this chapter 13 (part 3) is entitled "Sales by Execution." Section 8901 of the Code of 1932, under article 5 of chapter 13, part 3, provides that at any time before 10 o'clock A. M. on the day of sale "the defendant may deliver to the officer a plan of division of the lands levied on," etc., thus carrying section 3 of chapter 14 of the Acts of 1799 into the Code of 1932 without extending its scope. Section 8901 of the Code of 1932 is a literal reproduction of section 3043 of the Code of 1858. The latter section is contained in chapter 13, article 5, of the Code of 1858, and such chapter and article are entitled "Of Execution" and "Sales by Execution."

While we conclude, therefore, that the chancellor erred in adjudging that section 7802 of the Code of 1932, section 2154 of the Code of 1858, does not apply to sales under a trust deed, nevertheless we think the chancellor was required to dismiss the bill herein for the reasons following. Section 7800 of the Code of 1932, section 2152 of the Code of 1858, provides:

"Should the officer, or other person making the sale, proceed to sell without pursuing the provisions of this

chapter, the sale shall not, on that account, be either void or voidable.''

Section 7801 of the Code of 1932, section 2153 of the Code of 1858, provides:

''But any such officer, or other person, who fails to comply with the provisions of this chapter, is guilty of a misdemeanor, and punishable accordingly, and is, more-over, liable to the party injured thereby, for all damages resulting from the failure.''

Section 7802 of the Code of 1932, providing for the delivery to the officer or person making the sale of the plan of division of the lands, is contained in the same chapter as section 7800 of the Code of 1932, which pro-vides that the failure to observe the provisions ''of this chapter'' shall not render the sale void or voidable. Section 7801, declaring the failure of the officer or per-son making the sale to observe the provisions of the chapter to be a misdemeanor and providing damages for the injured party, is likewise contained in the same chap-ter with the other sections. All the corresponding pro-visions of the Code of 1858 are also contained in one chapter.

Since the statute declares that a sale, although the of-ficer or person making the same did not pursue the pro-visions thereof, shall neither be void nor voidable, the chancellor would not be authorized to set aside such a sale. Damages against the ''officer, or other person,'' is the remedy prescribed.

The chancellor being deprived by the Code of jurisdiction to set aside the sale herein on the grounds set out, he rightly concluded that he was without juris-diction to award the injunction sought or proceed fur-ther in the matter. Where injunctive and all other

equitable relief must be refused, the chancery court is without jurisdiction to entertain a suit involving unliquidated damages such as would be recoverable under section 7801 of the Code of 1932, section 2153 of the Code of 1858. *Union Planters' Bank & Trust Co.* v. *Hotel Co.*, 124 Tenn., 649, 139 S. W., 715, 39 L. R. A. (N. S.), 580.

We are referred by counsel for both parties to numerous decisions of other courts relating to the questions here discussed. We have not noticed these decisions, because we regard our statutes as controlling. The practice of selling in parcels, under an execution sale, upon demand of the defendant, has been approved in at least two cases. *Merrimon* v. *Parkey,* 136 Tenn., 645, 191 S. W., 327; *Northwestern Mutual Ins. Co.* v. *Jackson* (Tenn. App.), 83 S. W. (2d), 279. The creditor suffers nothing by such practice. If the parcel sold does not bring the debt, the second parcel may be sold to make up the deficiency. The land may then be sold as a whole, if it is thought better results could therefore be obtained.

For the reasons stated, the decree of the chancellor is affirmed and this bill dismissed, but without prejudice to the complainant to assert at law any rights he may have under section 7801 of the Code of 1932, section 2153 of the Code of 1858.

## ON PETITION TO REHEAR.

The Federal Land Bank asks a rehearing insofar as the former opinion of the court construed Code, section 7793. That section is as follows:

"Every person whose duty it is to sell land in a fiduciary capacity, or under judicial orders or process, shall, except in cases covered by section 10535, or in the ab-

sence of any special provisions on the subject in the authority under which he acts, publish such sale at least three different times in some newspaper published in the county where the sale is to be made, the first of which publications shall be at least twenty days previous to the sale.''

The particular language of this section which we are asked to consider is, ''or in the absence of any special provisions on the subject in the authority under which he acts.'' The Federal Land Bank insists that this clause, its trust deed providing the method of sale, takes' the case out of the provisions of Code, section 7802.

We think this is a mistake. Section 7793 relates to the manner in which the sale shall be advertised. The language relied on by the Federal Land Bank relieves the person selling land in a fiduciary capacity from pursuing the statutory method of advertisement, if the authority under which he acts provides a different method of advertisement.

Section 7793 does not relate to the conduct of the sale itself. The exception is as to the statutory method of advertisement, not as to the statutory method of conducting a sale prescribed by section 7802.

Another ruling is asked in the petition filed by the Federal Land Bank on a point that is not raised in the case. The land was not sold in parcels but as a whole, and this court has declined to set the sale aside. The proceeds of the sale will be disposed of as directed by the court below.

The petition to rehear filed by the Federal Land Bank is denied.

A petition to rehear is also filed by complainant, J. C. Doty, urging that the sale herein made should be set aside on account of the gross inadequacy, of the purchase price. This point was advanced and considered on the original hearing. It was not discussed in the written opinion because only a question of fact was involved.

The record does not show any such gross inadequacy of consideration, such an inadequacy as would shock the conscience of a court of equity, and such an inadequacy as our cases have deemed sufficient to justify setting aside a sale regularly made.

The land here sold for $3,800. Complainant, Doty, now claims that this was less than one-third of its value.

In the general creditor's proceedings, this land was twice put up for sale. On one occasion it brought $4,025. On another occasion it brought $100; the purchaser assuming the encumbrances.

Proof as to the value of the land taken in the general creditor's proceedings was conflicting. The master found from the weight of the proof that the land was worth about $6,000. In his answer filed in that proceedings this complainant said that the land was worth about $6,000, and in his deposition taken in that proceedings complainant said the land was worth about $6,000. He testified that he gave $6,500 for the land at a time when land was worth about twice as much as when his deposition was taken. Owen testified to the same effect.

It seems, therefore, on the record sent up, that the land here was worth about $6,000. Mere inadequacy of consideration is, of course, no ground for setting aside a trustee's sale. We refer to a few of our cases in which inadequacy of consideration has been so great as to influence the court to set the sale aside.

In *Wright* v. *Wilson*, 2 Yerg., 294, the land was worth ten times the purchase price.

In *Meath* v. *Porter*, 9 Heisk., 224, the land was worth about four times the purchase price.

In *Fenton* v. *Bell* (Tenn. Ch. App.), 53 S. W., 984, the land was worth seven times the purchase price.

In *Stewart* v. *Hamilton B. & L. Ass'n* (Tenn. Ch. App.), 47 S. W., 1106, 1107, the land was worth three times the purchase price.

In *Donaho* v. *Bales* (Tenn. Ch. App.), 59 S. W., 409, the land was worth from six to eight times the purchase price.

In *Mitchell* v. *Sherrell*, 11 Tenn. App., 210, the land was worth twice the purchase price, and there were other circumstances which induced the court to act.

In fact, in all the foregoing cases where sales were set aside, there were other circumstances combining with inadequacy of consideration to induce the action taken by the court. In the case before us we see no such circumstances. Nothing except the fact that the trustee declined to sell the land in parcels, and such failure on his part by the express provisions of Code, section 7800, did not render the sale either void or voidable.

Complainant Doty's petition to rehear is accordingly denied.